Thank you, Your Honors, Judge Paez, Judge Tashima, and Judge Speer. My name is Jeffrey Angel. I'm an attorney from Bozeman, Montana, and I represent Jeremy Ruhd. He was a 22-year-old gentleman working in Bozeman, Montana, and he fell two and a half stories, severely injuring his brain. What we have found from this case and from the others that appeared before the Ninth Circuit is there is no extent to which an insurer will not go to avoid paying benefits. Let's just back up here. I need to understand a few things about your case. And then I have a preliminary sort of question to ask for you. What exactly is he claiming that Liberty NW did to violate its obligation to act in good faith? That's an important question. What is the so-called – what benefits did it not pay? What is the root of this dispute here? It's a very good question, and I can answer it in two minutes. No, I want to answer it. Just answer it now. I mean, it'll take me two minutes to give you the answer. 242B6, the one that causes all the controversy, the one that has brought all of the claims to the Ninth Circuit and the certified questions, does not address what they did wrong by words. It says settlement or judgment. I still want to know what they did wrong. In work comp cases, there's no such thing as a settlement or judgment. And if there is, it's subject to being reopened. Let me make it myself clear. Apparently here, there was a – he was injured. Yes. He made a worker's comp claim. Yes. And apparently the insurance company didn't dispute it. Correct. So they agreed to pay. Correct.  Yes. And as part of that, I gather, he received some award for ongoing medical care and treatment. No. No? No. They have an ongoing obligation, day by day, to pay. Okay. What they did wrong. Okay. So at some point along the way, I gather from the briefs and from your – I guess it's from your briefs that I gather this. Some point along the way, they didn't pay a particular benefit that he was entitled to? Correct. Is that – is that what it is? The basic example – So tell me what it is. Is not giving pain medication. Pain medication. That's not just it. But that's an example. When you have an ongoing benefit that lasts throughout your lifetime, if they don't give it today and you go to the work comp court and they give it tomorrow, there's no longer a controversy. So was – he didn't get his – they didn't pay for pain medication? A better example is – What is my question? Is that what it is? They didn't pay for pain medication? They didn't pay for some of the prescribed treatment. Are you talking about physical therapy or are you talking about Therapies. Medication. Therapies, medication, respite care. He went home to his parents' house and when he showed up on Sunday night to get back in, 23 years old, can't care for himself, his bags are on the doorstep. And he has no place to stay. And guess who gets to care for him? The day you try to bring that to the work comp court to get a judgment or a settlement, they offer care in an old folks' home. Hold on a second. Okay, so he's complaining. His complaint against the insurance company is they didn't pay for this particular kind of care. Correct. All right. Now, at any point in all of this, did he ever go to the workers' comp court? No justiciable controversy. No justiciable controversy. If they don't pay for pain medication last week, but they provide it this week, what are you going to ask the work comp court to do? Order them to go back in time and give you that treatment, that domiciliary care, that physical therapy that you lost out on and you can never get back? I'm not too familiar with the workers' comp system in Montana, but I do know in California, at least I used to. I don't know how they're changing in California right now, but you used to be able to go back and get some sort of sanction against the insurance company for not complying with the award of benefits. Is that available in Montana? It has nothing to do with bad faith. No, no, I'm not talking about bad faith. I'm just talking about the workers' comp scheme. Yes, if they save $1,000 from not providing prescriptions from a year ago, you can bring a case through court, hire those physicians to come to court, and the court can award 20 percent. Of course. 20 percent of that $1,000. So you can get $200. Of course, the insurer still has a gain, and you've got the cost of pursuing it. But can they also penalize the insurance company for doing that? That is the penalty. It's a 20 percent, 20 percent statutory penalty. That's the only penalty that's recognized under Montana's worker compensation for something like this? Yes. Okay. Why is that? Why did you say that his claim is not justiciable in the workers' comp system? Because the claim for the benefit is not justiciable. You can go get a 20 percent penalty, but that has nothing to do with bad faith. Are you saying, counsel, let me see if I can get a straight answer out of you. If he has not got $100 of pain medication that he should have got, he can bring a claim in the workmen's compensation court, but can only get $20? Correct. He can't get the $100? No. You stipulate that? No. Of course he doesn't. But the reality is that he's not going to be able to answer this question. What's the court going to do? Make them give you money? Sure. Now I'm getting to where I can ask him the question. My next question. What is he asking for in this case? In this case, he is hoping to hold them accountable for all of the money they made at the expense of his recovery. How much is that? How much did they save? We weren't allowed to do discovery. His treatment occurred down to that. We didn't allege an amount. The treatment was given in Texas. I have had some discussion, but we need to conduct actual discovery. $75,000? The parties stipulate that if what they did was wrong, it's more than $75,000. It's in the briefs on the first page in the Ninth Circuit, and it was before the Federal District Court. And it's right here. It says on Apelli's brief, page 1, Statement of Jurisdiction, the amount in controversy exceeds $75,000, and the parties are citizens of different states. That's a stipulated set of facts that was present before the District Court and is present here. Was there an active stipulation of that effect in the District Court? No. It was in my understanding, and again, I tried to – Well, they answered the complaint if, in fact, an act – You can't confer jurisdiction. Right. My understanding is it's not disputed. It was never questioned in the District Court, and they – Did you ever present an affidavit to the District Court saying that this – basically the exchange that I've had with you about what you're claiming? No. There's no requirement, and the issue was not raised. Wasn't there some concern about jurisdiction in the conversation, in the hearing before Judge Malloy? It was in front of Judge Siebel. The other judge. When he had two cases in front of him at the time, and one of the issues that he was discussing was jurisdiction. And he said, well, you know, I probably should just go on and – we've all talked about the merits of this case. I should probably just go on and address the merits. Correct. In the complaint, yes, that issue did come up. Well, I'm looking at your complaint. In the complaint, in paragraph 11, it says, jurisdiction is based on complete diversity of citizenship. Now, that means that the plaintiff, Jeremy Rood, and Liberty Northwest are citizens or were incorporated in different states. Now, to specify which is which, in paragraph 12, plaintiff is a resident of Belgrade, Gallatin County, Montana. Defendant is incorporated in another state and registered to do business in Montana. I don't – well, before I say it, I don't see it. You also don't allege where the principal place of business of the defendant corporation is, which is a basis for citizenship, is it not? My understanding is it is. And if that were challenged in the district court, this is just a suggestion. It seems to me that the proper remedy, if the court was concerned about that or if the issue was brought up, is to give us an opportunity to amend. I didn't – I'm not sure. When Judge Haddon, I think, indicated, as both of my colleagues have indicated, that one basis for granting the motion was that the jurisdiction of this court has not been established on the record. Do you think you could amend it? Did you ask for me? I would like to say yes, but I'd have to read the transcript because there was not a written order. I understood that, and I might be wrong here, but I understood that issue to be when the Respondent files its brief and stipulates to these two – or states these as facts. The brief wasn't filed until an appeal was taken by you. We're talking about the trial court. And unless there's some other portion of the brief to which you have not directed me, the Defendant does not stipulate that the principal place of business of the Defendant is outside the State of Montana. If the fact – So there are two bases. I mean, there's two primordial bases to diversity of jurisdiction. And you haven't alleged either one. And if the fact that there is not an allegation, although the parties agreed on that $75,000, or that it says resident of Belgrade and not citizen, I think the appropriate remedy would be to remand this case to the district court. Yes. Do you think your co-counsel would stipulate that the Mountain controversy exceeds $75,000? Yes, I do. Absolutely. And I think he would stipulate that Liberty Northwest does not have its principal place of business. He certainly didn't get it. I didn't get that from the record below. If you were to file a new action now, would you be beyond the statute of limitations? That is the game that's being played with this idea of a settlement or a judgment. We have the cases – Look, Federal courts are courts of limited jurisdiction. I'm sorry you think it's a game, but it's not a game. I mean, this is easily cure – this is easily curable in the district court. And it can even be cured here if the record is sufficient. I just went through, if you're trying to get out from me, what the basis of his claim was, so I can have a better sense of what might be the value. But I still have no real idea, other than he didn't give his pain indication. And he returned home from being in respite care, taking a weekend vacation. There's no declaration to that effect? There is nothing in the complaint? I had to draw it out of you. Correct. We were not allowed any discovery. The complaint was sufficient. Why do you need discovery to submit a declaration that just set forth what I just said, had you relayed to us on the record here? To be particular about what acts – the whole point of the complaint, and this is the way I take it to not confuse people, although it doesn't seem to be working here, is to be very general about the alleged acts. And then in discovery, the attorneys, of course, in this case, would go to Texas and talk to the doctors down there. There have been informal exchanges of more information, but not on the record. The court dismissed the case. And what we have is a gentleman that's severely injured, was not given his therapies, his medicines, and the treatment in a timely fashion. The power to deny timely payment for an insurance company is the power to make money. He's not going to have a remedy if, in fact, they're going to say, as they did in the prior case, well, those acts occurred way back in 1993. Are we going to be here in 2008 in a case where they say, we might have done some bad things, but those occurred back in 1999? I think that the stipulation in the written record before the Ninth Circuit does support that opposing counsels stipulate that the case is in excess of $75,000 and there is complete diversity. I think the facts in the complaint certainly make the case. But that was not before the judge in the district court. So, therefore, it stipulates later. The statement before the district court was that it was based on diversity under 28 U.S.C. 1332 because there was complete diversity, and then there was a resident of Belgrade, Montana, and a corporation doing business in the area.  I don't know if you could cure your motion for, I leave to amend and allege what the form books require. Next question is, you haven't exhausted your remedies under the Montana Workers' Compensation Act by reducing your claims through judgment under the section of the Montana Act, which 3318.242.6b, right? And that's what I was hoping to explain today. Every prior case dealt with a type of ailment or a type of injury that could reach final resolution. That is impossible in this case. There is nothing we could bring to the workers' compensation court. He will require ongoing treatment the rest of his life. And if they deny ---- Can that be a judgment? They can say, look, our judgment is he should have been provided medicine when he wasn't, and here's $100 to provide his compensation for not being provided that, or $1,000. Secondly, we find he's permanently rated disabled, and he will get $1,000 a month until he dies. Third, you have a continuing duty of care, provide medical care, which cannot be compromised and therefore cannot be released, and he will get it until the day he dies. All those things are part of a judgment. Once you've got that, then you can say, aha, but there were things that you held back, and here's my cause of action. Right? But until you've got the judgment, you can't do that. Impossible to get a judgment that says that in Montana, and here's why. I file a ---- What part of it was impossible? Every one of those. I file a judge or a petition, and actually did after this was dismissed, saying each one of those things. Admit that he's permanently disabled and everything in the past is then paid, and they come in and say, it's all true, we have no dispute, you have no jurisdiction in court, and the Workers' Compensation Court has no jurisdiction. Where is that in the record, please, counsel? It's not in the record. My point in saying that is it's impossible without a dispute to bring a case before the Workers' Compensation Court. You have a dispute. Your man wasn't given medicine for pain when he needed it. True? Yes. But that's a dispute. The court can order that we go back in time, and he gets that. It was only a little while ago that the Workers' Compensation Court could order, you know, something like a penalty. A 20 percent penalty. Correct, which has nothing to do with the original benefit, and it has nothing to do with bad faith. It is an extra thing you can get under the Workers' Compensation statute. It's not ordering the payment of the medicine. It's not ordering that he get the respite care. It's not ordering that he get a handicap accessible van. Let me ask one other question about the background of this case. I gather that just because the insurance company acknowledged liability or responsibility for the injuries, that it was obligated. This never went to the Workers' Comp Court. And it cannot. Correct. There is nothing I can frame that the Workers' Compensation Court can take jurisdiction over because they're only delaying. Now, what if the insurance company said, we're through, we're not paying any more benefits? We'd be in business. Or if they said, we'll enter into a settlement agreement, and this is an idea I had, that you were entitled to everything in the past. I mean, that essentially all the care we've given in the past, you were entitled to, and now we can challenge whether they gave it appropriately. But they're not going to agree to that kind of a settlement because now that starts the ability to bring them and make them accountable for bad faith. I will save the last minute for rebuttal. Thank you. That's a good idea. Let's hear it from the other side. Thank you. May it please the Court. My name is Chuck McNeil from Garlington Law and Robertson. I'm appearing on this case. Do you stipulate that the amount of controversy exceeded $75,000? No. What I will say, though, is that the plaintiff failed to allege the sufficient facts to establish diversity jurisdiction. The lower court recognized that, moved on anyway to address the issues that we have before us here today. When we're on appeal, I did in my brief indicate that diversity of citizenship exists and the amount of controversy is claimed to be in excess of $75,000. That was not cured at the district court level. An amended complaint would probably cure that defect, which is why I believe Judge Haddon went ahead and addressed the substantive issues because they are likewise dispositive of the entire claim. First of all, there is a remedy. First of all, you also have to have jurisdiction. Pardon? You have to have jurisdiction. I understand that, Your Honor. As it sits today, you do not. If you were to remand it and have an amended complaint filed in district court, we'd probably be right back again on the same issues. May it please the Court to address the issues that we have or not? Go ahead. Okay.  Basically, what we have here is a dismissal of the complaint under 12b-6 because neither of the prerequisites to filing a third-party bad faith case have been met. There is no judgment by the Workers' Compensation Court awarding a previously denied benefit or finding that there was an unreasonable delay, which is also the judgment that the Court could issue. Never any proceeding commenced in the Workers' Compensation Court in this case? Is that correct? Correct. Not as to this. There was a proceeding that dealt with impairment ratings unrelated to the issues alleged in the complaint. There has never been. In fact, Your Honor, in the plaintiff's reply brief at page 5, I quote, Liberty Northwest argues, there is no allegation in the complaint that a dispute over payment of benefits under the Montana Workers' Compensation Act has been the subject of litigation through judgment before the Montana Workers' Compensation Court. This is true. He has admitted that there is no judgment before the Workers' Compensation Court. So what we do have is I want to deal first with the representations that there is no such thing as a judgment or that he could not get a judgment. He could. It's non-justice of all the Workers' Compensation Court. Your Honor, he could file a petition in two ways. One is to seek a declaratory relief, which the Workers' Compensation Act allows, and have the Court declare that there were benefits owed and not paid in a timely fashion. The other is to seek a penalty, which is a 20 percent penalty for unreasonable delay or refusal to pay a benefit. Neither has occurred. Had either of those occurred, there would be a judgment. And then this Court and the bad faith case could proceed. What we don't have is we don't have any allegation of a judgment before the Court. The complaint ---- The declaratory relief action that he could ---- you say he could file in the Workers' Compensation Court, and if he establishes the benefits were unpaid in timely fashion, what is his remedy? Get the value of those benefits paid him now? Yes. He would have a judgment in his favor, and then he could file a bad faith case. Could he? And then would he be able in the Workers' Compensation Court to say, not only did I not receive $100 worth of morphine back in January of 2004, but I suffered pain as a result of not receiving the morphine, and that was worth $10,000 in pain and suffering? No, Your Honor. He would be entitled to the award of the benefits that were allegedly unreasonably denied and 20 percent on top and cost. And then once he got that judgment, he would have to say, as a result of your bad faith refusal to pay me these benefits, I suffered some pain which I want to tell the jury about, and you get $10,000 a day for the pain that I had. Exactly. But he can't go to Federal court and allege third-party bad faith until he has met one of those two prerequisites. I actually went to State district court first. That's right. That's true. Let me ask you. Did he come to Federal court first? He filed directly in Federal court. I think he did. The other one might. Go ahead. It wasn't removed. What's the State statute in the Workers' Comp scheme says he has a right to file a death relief action in the Workers' Comp Court? 3971-2905, I believe. Hold on. Hold on. 39-71-2905, I believe, is the jurisdictional statute. The penalty is 39-71-2907. Both of those statutes are quoted and are cited in my brief as giving the exclusive jurisdiction to the Workers' Compensation Court to address issues relating to benefits. And he has two other claims besides the statutory bad faith claim. Yes, he does, Your Honor. He has a contract claim. Right. And he has a common law bad faith claim. Right. Now, what do we ñ what about those claims? Well, first of all, as to the breach of contract claim, I think that I can easily dispose of that because we have a system in Montana that deals with workers' compensation benefits. There is an exclusive court to address those issues. And quite frankly, the Workers' Compensation System and the Workers' Compensation Act trumps any potential common law contract, preempts it. Call it what you want. There is no breach of contract claim that's viable. The second one is a little more difficult, although in the recent O'Connor case, which I have the Respondent, Alexis, in representing them, there is now clearly a rule in Montana, both as to common law and as to statutory claims, that you must first have a settlement or a judgment entered in favor of the claimant. And that statute is ñ O'Connor case we were just talking about in the previous case. Yes, Your Honor. And I did file and sent to the court the opinion after the rehearing was denied. It was decided about a month ago. And what that case did, and it's important for our discussion today, is it addressed those decisions that dealt with workers' compensation claims handling and bad faith actions. And what we have is a series of cases, the Grens case, Poteet, Brewington, and then O'Connor. In the Grens case, the court said we're going to dismiss the complaint under 12b-6 under the Montana rule because there was no determination by the workers' compensation court that there was a denial of benefits or improper conduct. So the case was dismissed. Go to the workers' compensation court and get your judgment, which is what Grens should have done. The next case is Poteet. And Poteet is important from the standpoint of addressing the allegations in the workers' compensation claim. It must be in writing, submitted by the claimant with a concurrence of the insurer and approved by the Department of Labor. In Poteet, there was a settlement. And the court then allowed that all bad faith conduct allegations before the date of the settlement had accrued and could proceed. All alleged bad faith conduct after the settlement could not because it wasn't reduced to a settlement. Now, the next one is the Brewington case, which was also addressed earlier today. And in Brewington, the court stated outright that a third-party bad faith claim based upon improper adjusting or handling could not be brought prior to settlement or judgment, whether based on statute or the common law. Now, in Brewington, they combined then both statutory and common law bad faith cases. You must have a settlement or a judgment added in favor of the claimant. In the O'Connor case just recently, the court addressed the question of conduct up to the date of a workers' compensation court judgment as opposed to conduct thereafter. And the court in O'Connor said that for statute of limitations purposes, both statutory and common law bad faith claims accrue when the workers' compensation court enters a judgment, ordering the insurer to pay for a previously denied benefit. The same is true in the connection with a penalty, because in the Brewington case, they did proceed to the workers' compensation court. He got his judgment, which included 20 percent penalty, and that was allowed to proceed on a third-party bad faith case because it had been reduced to a judgment. Now, in this case, there is no judgment. And I've already read from the Respondent's brief that he has agreed that he has not proceeded before the workers' compensation court. He argues that he can't. I respectfully disagree. That's what that workers' compensation court is for. He can file a petition and say, yes, as I alleged in my complaint, which he did in this case at paragraph 6, that Liberty Northwest has never expressly refused to provide any benefits. We paid all the benefits, all of them. Now, if the claim was we paid it late, then he goes to the workers' compensation court and under 39-71-2907 says there was an unreasonable delay. The judgment comes down. There's an unreasonable delay. Now the prerequisite to filing the bad faith case has been met, and he can file it. If there's an unreasonable delay, the applicant recovers both the money that has not been paid him and should have been paid him, and if there's the statutory elements on 2907, the penalty. Correct. And then we have a judgment. So 2905, an award can be increased to pay what should have been paid and wasn't paid. 2905. 2907, you get the 20 percent extra. Not quite that simple. 2905 is the statute that creates exclusive jurisdiction in the workers' compensation court. It doesn't deal with specific benefits. There's other sections. That's the one that says all disputes arising under the Act must be brought before the workers' compensation court. 2907 gives the workers' compensation court exclusive jurisdiction to increase the award as a penalty. But again, he can proceed under either declaratory relief or seek a penalty in the workers' compensation court. Once that is reduced to a judgment, then his claims today are no longer premature. But are you saying that the increase of the award cannot take into consideration what money should have been paid and wasn't? Oh, no. It would take into account what money, what benefits should have been paid, and if they haven't been paid, although he admits we paid them all, then they would award those benefits in addition. What is he saying now? He's saying that he should have gotten some pain medication, which he didn't get. Well, Your Honor, since this is an appeal of a dismissal of a complaint under 12b-6, I think we look to the allegations of the complaint as being deemed admitted. Correct. In paragraph 6 of the complaint, he specifically says that Liberty Northwest has never expressly refused to pay any benefits. Expressly refused. We paid them all, Your Honor. And so if he says we paid them late, he has to go to the comp court and get a judgment. What we have is basically a situation where he has alleged, but he hasn't alleged that before the workers' compensation court first. There's no judgment and there's no settlement. And until there's either a judgment or a settlement, then his bad faith claims are premature. The statute hasn't begun to run yet until he accomplishes those two things. We don't have a settlement approved by the Department of Labor, and we don't have a judgment from the workers' compensation court awarding a previously denied benefit. And under the line of cases addressed in the O'Connor decision, clearly the motion to dismiss that was granted should be affirmed on appeal.  Yes, go ahead. It occurs because of a question that Judge Pye has asked a moment ago. Does the fact that this case is pending in district court toll the statute of limitations of the plaintiff to bring a workers' compensation court action and reduce his claim to judgment or settlement? No. He can bring a claim in the workers' compensation court any time. There's no statute of limitations? Not as to the bringing of specific disputes. There's a statute of limitations on filing an initial claim. He did that in a timely fashion. For unpaid benefits? Yes. Unpaid benefits, he can file it to tomorrow. He could file it tomorrow. They make that jurisdiction to monitor his receipt of workers' comp benefits. Absolutely. And that's the purpose of the workers' compensation court, so there's always a court that a claimant can go to and say, they didn't pay me this benefit, they owe me this. Somewhere in the back of my mind is rattling around the idea that if he doesn't file an action within two years of the injury, doesn't file a claim within two years of the injury, he's going to be time barred. Is that wrong? That's true, but here the claim was filed within two years. The workers' compensation. He doesn't have to file an action under 2905 and 2907 to establish late payment compensation and penalty. Right. Right. Once he files a timely claim, then he's entitled to any benefits under the act, and he can seek a remedy before the workers' compensation court to that effect. I think that it's important that we keep in mind the fact that workers' compensation claims and the workers' compensation system is different. And in the O'Connor case, the appellant in that situation argued that the court should look outside of workers' compensation in cases like you addressed in the previous argument, the Ridley cases and such and such. And the Montana Supreme Court specifically rejected that and said in the context of workers' compensation claims and bad faith cases arising out of the adjusting and handling of workers' compensation cases, then you look to the Grens case, Poteet, Brewington, and now O'Connor. And those are the four third-party bad faith cases that deal with workers' compensation adjusting and handling. And I think it's important that we confine that because that's what the Montana Supreme Court has said. All of those cases require that before you can bring a third-party bad faith claim, you must have either a judgment or a settlement. And in this case, we have neither. With that in mind, Your Honor, are there any further questions? Thank you, sir. All right. Thank you. Then we would respectfully request the court to affirm the lower court's determination and dismiss the complaint without prejudice as being premature. Thank you. All right. You've saved a little time for rebuttal. Thank you, Your Honor. O'Connor is important because it proves most of what's in the Respondent's Brief to be incorrect. Justice Carla Gray, when she's talking about Brewington, makes clear in this opinion that when the insurer began to make the payments, that's when the statute, and they're talking about attorney's fees that were denied, that's when the statute of limitations began to run. Now, in that case, they could have gone to the work comp court and got a 20% penalty on those insurance payments, the attorney's fees payments, because they weren't being made. But, again, that's distinct. The 20% penalty in the work comp system is distinct from the accrual and right to bring a bad faith case. And here's what the Respondent put in their brief. Finding of unreasonableness does not amount to determination that the insurer acted in bad faith or violated the UTPA. That's specifically written into 2971-2907. And it's written in there to make clear that the penalty and the bad faith statutes are separate. All you need to do is have a payment of a benefit or have the benefit be lost for the cause of action to occur. Kennedy. I mean, you've got to establish first that there's a breach of contract. Then there's a bad faith, that it was a bad faith breach of contract. But you've got to establish first, as I understand it, the exclusive jurisdiction for saying there's been a failure to pay a benefit is the Worker's Compensation Court, is it not? No. The court, the Worker's Comp Court, has absolutely no jurisdiction over that. It's not over the determination of bad faith. And that's written into the statute. Let me try to explain myself. Bad faith is a two-step process. You've got to prove first that there's a contract and a breach of that contract and that that breach was in bad faith. The first step, was there a contract? That's clear here. He was insured. Was there a breach of the contract? That first goes to the Worker's Compensation Board under 2905 and 2907. But it When you've proved that there has been a failure to pay the benefits, then you can say the failure to pay the benefits is in bad faith and sue in district court. Is that not correct? That's not correct. And it's demonstrated in Brewington, the claim for those attorney's fees. Those could have been, for the penalty, brought to the Worker's Compensation Court, but weren't. All the insurer has to do is delay payment to violate the statute, and if they refuse to enter into a settlement and keep the court from accepting jurisdiction because there's not a pending current controversy, they've defeated being held accountable under the act. Thank you. All right. We thank you. We understand your position. We thank both counsels. The case is submitted for decision. Being the last case on today's calendar, we stand in recess. All rise. Thank you. The court for this session stands adjourned. Thank you. Thank you. Thank you. Thank you.
judges: Tashima, Paez, Bea